IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BENJAMIN T. CLARK,

    Petitioner,

vs.                                                                         Cause No. 1:12-cv-58 RB/WDS

JAMES LOPEZ,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    The District Judge referred this matter to the undersigned Magistrate Judge to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. [Doc. 4.] For the reasons stated below, the Court recommends Petitioner's remaining claim be denied and the case be dismissed with prejudice.

**I.    BACKGROUND**

    Petitioner Benjamin Clark (Clark) is a *pro se* prisoner litigant. He seeks habeas relief under 28 U.S.C. § 2241 for the restoration of good time credits that were revoked after he was convicted in a prison disciplinary proceeding.

    **A.    Factual background**

    At the time relevant to his claim, Clark was incarcerated at the Southern New Mexico Correctional Facility (SNMCF) serving a 27-year sentence for numerous counts of armed robbery. [Doc. 1 at 2; Doc. 8-1 at 1–4.] On June 14, 2007, Clark was placed into lockdown, closed custody

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

segregation under prehearing detention while prison officials investigated him for an infraction allegedly involving gang activity. [Doc. 1 at 3; Doc. 8-1 at 33.] In segregation, Clark had little or no contact with other inmates. [Doc. 1 at 3.]

Shortly after Clark was placed in segregation, inmate Fred Sanchez arrived at SNMCF. [Doc. 1 at 3.] Sanchez allegedly asked prison officials to place him in protective custody, but they refused and released him into general population on June 16, 2007. [Id.] Sanchez was killed that same day at approximately 6:20 p.m. [Id.; Doc. 1-1 at 12.] Prison officials did not discover Sanchez's body in his cell until the following day, June 17, 2007, at about 11:05 a.m. [Doc. 1-1 at 12.]

### B.     Prison disciplinary proceedings

Prison officials conducted an investigation into Sanchez's murder. They concluded Clark had ordered the murder and that three inmates housed in the same pod as Sanchez had carried it out. [Doc. 1 at 4–6; Doc. 1-1 at 12.] Investigator Anthony Romero prepared an Inmate Misconduct Report summarizing his investigative findings:

> On June 17th 2007 at approximately 11:05 a.m. Inmate Freddie Sanchez ... was found dead in his cell. As a result of this death I was tasked with conducting an investigation into what occurred and how it occurred. During the course of my investigation numerous interviews were conducted and information surfaced from more than one source that inmate Sanchez ... was murdered by three inmates on the night of June 16th, 2007 at approximately 6:20 pm and that inmate Benjamin Clark ... was specifically identified as the inmate who ordered that inmate Sanchez ... be killed and is therefore an accessory to the murder. The information received is corroborated by more than one source, corroborated by the [Office of Medical Investigator] report, and corroborated by other specific information that was corroborated during the course of the investigation. I completed my investigation on July 5, 2007 at approximately 9:00 am.

[Doc. 1-1 at 12.] A disciplinary officer concluded the matter warranted a hearing and advised Clark of his right to attend. [Id. at 14.] The disciplinary hearing originally was set for July 13, 2007, but continued to allow Clark and his representative more time to prepare. [Id. at 17.]

2

The disciplinary hearing was held July 17, 2007.  A summary of the proceedings indicates the charge against Clark was based largely on information supplied by a confidential informant (CI):

> It was established that Inmate Clark was not in the same unit, where the murder occurred, but as the CI states, Inmate Clark was aware a couple of weeks prior to Inmate Sanchez's arrival, Inmate Clark had received information stating that Inmate Sanchez was a rat, and that was when Inmate Clark gave the order to have Inmate Sanchez taken out/killed.

[Doc. 1-1 at 18.]  A summary of the confidential information collected during the investigation was presented on the record at the disciplinary hearing, submitted in writing, and the hearing officer made a finding that the information was reliable.  [Id.]  The Summary of Confidential Information states:

> On July 12, 2007, this Hearing Officer received and reviewed confidential information on an incident/murder which occurred on June 16, 2007.  The information was considered to be reliable as this was based on first hand observation, more than one source, and corroborated by the physical evidence, (the deceased body of Inmate Freddie Sanchez ...).  The information showed that you, Inmate Clark, gave the order to have Inmate Sanchez taken out, (KILLED).  This was due to Inmate Sanchez allegedly being a rat, as a couple of weeks prior to Inmate Sanchez arriving to the facility, Inmate Clark had received information that Inmate Sanchez was an informant in the streets.

[Doc. 1-1 at 13.]  Clark denied he was involved in Sanchez's murder because he had been moved out of the pod before Sanchez arrived and therefore was not present when the murder occurred.  [Id. at 17–18.]

On July 31, 2007, a disciplinary officer issued a report finding Clark guilty of the charge of murder.  [Doc. 1-1 at 11.]  The decision was based on (1) investigator Anthony Romero's investigation concluding that Clark had given the order to have Sanchez killed and (2) confidential information.  [Id.]  The penalty imposed was disciplinary segregation for a period of 365 days and forfeiture of all available earned good time credits, a total of 2,202 days.  [Doc. 1 at 3; Doc. 1-1 at 11.]  Clark filed a disciplinary appeal on August 5, 2007, which was denied on October 4, 2007. [Doc. 1-1 at 2–9.]

3

### C. State court proceedings

Clark sought review in state court by filing a Petition for Writ of Habeas Corpus on February 12, 2008. [Doc. 8-1 at 5–20.] In opposing Clark's petition, the respondent in the state habeas proceeding alleged that Clark is a validated member of a prison gang and ordered the killing of Freddie Sanchez, thereby committing the disciplinary infraction of Accessory to Murder. [Id. at 23.] The respondent further asserted that a prison official who specializes in investigating prison gang activity conducted an investigation into Sanchez's death, and that during the course of the investigation, more than one confidential source implicated Clark as an accessory. [Id. at 27.] According to the respondent, the "confidential informants' statements were corroborated by the physical evidence, and specific facts provided by the informants, about the murder, were corroborated." [Id.] The Corrections Department deemed the informants credible and their information reliable. [Id.]

At some point during the state habeas proceedings, counsel was appointed to represent Clark. Clark's attorney obtained additional information regarding two confidential informants' statements that was not available to Clark during the prison disciplinary proceedings. According to allegations in Clark's petition, he learned during the state habeas proceedings that the first confidential informant "is a validated SNM [prison] gang member" who reported to Investigator Romero on June 19, 2007 "that Benjamin Clark who moved a day prior [to Sanchez's arrival at SNMCF], believed that Sanchez kited Clark out as an enemy, and inmate Clark ordered Sanchez to be taken out." [Doc. 1 at 4.] Clark also learned for the first time that a second confidential informant reported to different investigators that:

> [A] couple of weeks prior (to Sanchez arriving at the facility) [the second confidential informant] observed Clark with paperwork, and inmate Dwyer got rid of the paperwork. The [the second confidential informant] observed meetings that [the second confidential

4

>informant] was not a part of. [The second confidential informant] believed [the second confidential informant] was going to be moved on. So [the second confidential informant] asked Raymond Rascon why [the second confidential informant] was left out. Which Rascon replied "When you need to know, you will know." As a result this confidential informant believed Benjamin Clark ordered the hit. Because the informant heard that Sanchez ratted on a female.

[Doc. 1 at 4.]

The state habeas judge consolidated Clark's habeas case with the habeas petitions of four of his alleged inmate co-conspirators and conducted an *in camera* inspection of the confidential information. [Doc. 8-1 at 60–61; Doc. 8-2 at 56–57.] After conducting an *in camera* inspection, the state judge denied all the petitions for habeas corpus, including Clark's, in a single written ordered filed March 28, 2011. [Doc. 8-2 at 3–6.] Clark's attorney filed a Petition for Writ of Certiorari on April 27, 2011; the Supreme Court of New Mexico denied the petition on June 28, 2011. [Id. at 7–17, 64.]

### D. Federal habeas proceedings

Clark filed his federal petition for habeas corpus on January 18, 2012. [Doc. 1.] His petition asserts two claims arising from the prison disciplinary proceedings. In Count I, Clark alleges that the disciplinary conviction violated his due process protections because it was based on insufficient evidence. In Count II, he asserts that the disciplinary punishment violated his constitutional protection against cruel and unusual punishment and his due process rights. Clark sought damages and the restoration of the forfeited good time credits.

The Court dismissed Clark's damages claim without prejudice and construed his complaint as a petition for writ of habeas corpus under 28 U.S.C. § 2241. [Doc. 3.] Clark's remaining claim, which Respondent concedes is exhausted, challenges the sufficiency and reliability of the confidential information used against him. The Court directed Respondent to submit for *in camera*

review the confidential information submitted to the state habeas court and which the hearing officer relied on in determining that Clark was guilty of the disciplinary charge of murder. [Doc. 10.]

In a "Supplement to Petition of Habeas Corpus" [Doc. 14], Clark alleges that the same evidence used to convict him in the disciplinary proceeding was found insufficient to convict one of his alleged co-conspirators, Kyle Dwyer. He attaches a copy of the Disciplinary Decision in Dwyer's case which states there was not enough evidence to substantiate the allegation that Dwyer was the inmate who provided the documents to SNM gang members who then ordered Sanchez killed based on the information contained in the documents. [Doc. 14 at 9–10.]

## II.     LEGAL STANDARDS

The loss of earned good time credits is cognizable as a federal habeas claim if it inevitably affects the duration of the inmate's sentence. *Wilson v. Jones*, 430 F.3d 1113, 1120–21 (10th Cir. 2005). In the Tenth Circuit, a claim for loss of good time credits is construed as challenging the execution of a sentence and is therefore properly brought under section 2241. *Cooper v. Jones*, 372 F.App'x 870, 870 n.1 (2010) (unpublished) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)). The deferential standard of review applicable to habeas petitions under section 2254 does not apply; instead, review is *de novo*. *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007).

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (citations and internal quotation marks omitted. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Where a prison disciplinary hearing may result in

the loss of good time credits, ... the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67).

Further, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 445 (citation, quotation omitted). The "some evidence" standard is not a significant hurdle; it may be satisfied even if the evidence might be characterized as meager. *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the decision reached by the disciplinary board." *Id.* at 455–56 (citation omitted).

### III.   DISCUSSION

####    A.   Disciplinary convictions need only be supported by "some evidence."

Clark's first argument relates to the quantum of evidence and the nature of evidence that are sufficient to support a disciplinary conviction. He argues that under New Mexico law, substantial evidence is required to support a disciplinary conviction that results in the loss of good time credits. [Doc. 1 at 11.] Clark also argues that the challenged action must be supported by evidence that would be admissible in a jury trial. [Id. at 11–12.]

Under federal law, a forfeiture of good time credits need only be supported by "some evidence"—a standard that is "significantly less than substantial." *Tigert v. Higgins*, 290 F.App'x

7

93, 101 (10th Cir. 2008) (unpublished). The Court accordingly rejects Clark's argument that the disciplinary conviction must be supported by substantial evidence.

The Court also rejects the argument that a disciplinary conviction must be supported by evidence that would be admissible in a jury trial. The touchstone for confidential information is reliability. *Taylor*, 931 F.2d at 702. "Any reasonable basis" for establishing the credibility of the informant's information is acceptable, including:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, "he had firsthand knowledge of the sources of information and considered them reliable on the basis of 'their past record of reliability,'"; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Taylor*, 931 F.2d at 701–02 (quoting *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985)). A reliability determination using any of these techniques or "any other reasonable basis having a factual underpinning" is acceptable. *Id.* at 702. There is no requirement under federal law that the basis for determining reliability be admissible at trial.

**B.     The hearing officer's reliability determination is supported by some evidence.**

Clark argues that prison officials were not entitled to rely on the statements of confidential informants because their reliability was not adequately established. [Doc. 1 at 10–12.] The Tenth Circuit holds that "the testimony of confidential informants cannot be given any weight absent a 'determination made by the prison staff that indicated that the informant was reliable.'" *Taylor*, 931 F.3d at 701 (quoting *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987)). On a habeas challenge to confidential information, the Court need only determine "whether reliability has been established by some evidence." *Id.* (citing *Hill*, 472 U.S. at 455–56).

After examining *in camera* the information supporting the hearing officer's reliability

8

determination, the Court concludes that the reliability determination is supported by some evidence. Information that Clark is the inmate that ordered the murder of Sanchez is corroborated by more than one source. The Court is satisfied that there is independent and meaningful corroboration among the multiple sources.

In addition to the *in camera* submissions, information in the public record of this case lends credence to the theory of a murder conspiracy and Clark's role in it. Clark is allegedly a validated member of a prison gang and has been convicted for other conduct involving prison gang activity.[2] [Doc. 1-2 at 42; Doc. 1-3 at 6, 12.] The Sanchez murder was investigated by a prison official who specializes in investigating prison gang activity, and Clark was prosecuted in prison disciplinary proceedings along with four other inmates, all of whom were convicted of the disciplinary infractions of murder or accessory to murder. [Doc. 1-2 at 46; Doc 8-1 at 45.]

As the state habeas judge stated in his order denying the petitions:

> It is clear from the video of the pod that the camera was covered from approximately 6:23 pm until approximately 6:30 pm. Confidential information substantiated that Mr. Freddie Sanchez was murdered during that period. The condition of Mr. Sanchez's body when discovered is also consistent with the murder occurring during the time frame when the camera was covered.

[Doc. 8-2 at 5.] Although this particular information does not mention Clark, together and in context with the other information viewed *in camera*, it sufficiently establishes that the sources of the statements implicating Clark are reliable. The covering of the camera during the precise time that the murder occurred was not likely a coincidence, and is in itself some evidence of a

---

[2] At the time of Sanchez's murder, Clark was detained in segregation and under investigation for prison gang activity. He was subsequently convicted for this conduct which involved sending a letter to another validated gang member containing a list of all the inmates housed in a certain housing unit, separated by pod. In the letter, Clark allegedly wrote: "Send me a message by the code if you want someone gone. Our Code will be 'How's (whoever's) familia doing, and how is he?' This is between me and you Only Herman." Prison officials considered the letter evidence of prison gang activity and a threat to the security of the institution. [Doc. 8-1 at 41.]

coordinated plan whose success depended upon the cooperation of numerous actors over a period of time to plan, execute, and conceal the crime. Clark's defense is based on the undisputed fact that he was in closed custody and incommunicado when Sanchez arrived in the pod and was murdered. However, that fact is irrelevant if Clark ordered the murder weeks in advance of Sanchez's arrival.

Clark argues that one of the informant's statements are not reliable because the informant did not have firsthand information. [Doc. 1 at 11–12.] Clark points to statements wherein an informant admits "there was a series of meetings that [the informant] wasn't privy to." [Doc. 1-2 at 38.] The Court does not agree that this statement demonstrates that the informant's information is not reliable. Merely because the informant may not have been privy to some meetings does not mean the informant was not privy to other relevant information. Having reviewed the *in camera* submissions, including the statements Clark relies upon, the Court concludes that the statement does not reflect an absence of firsthand knowledge regarding the relevant events, nor does it diminish the reliability of the confidential informant's information. The informants' knowledge of corroborating details is sufficient to establish their reliability.

Clark argues that because there was not sufficient evidence to convict inmate Dwyer of transporting the documents identifying Sanchez as an informant, there is *a fortiori* not sufficient evidence to convict him of ordering the murder. [Doc. 14 at 1, 3, 5.] The Court disagrees. Regardless of the means of transportation, prison officials found that the paperwork had been transported to SNMCF prior to the murder of Sanchez. [Id. at 9–10.] As the Court discussed above, the conclusion that Clark is the inmate who ordered the murder is not based solely on one confidential informant or isolated piece of information; it corroborated by more than one source. The conclusion does not depend on the identity of the inmate who transported the documents to SNMCF.

### C. The Summary of Confidential Information was not inadequate.

Clark argues that prison officials violated his due process rights by failing to provide a sufficient Summary of Confidential Information so that he could defend himself at the hearing. [Doc. 1 at 10.]³ Clark's argument that the Summary of Confidential Information did not comply with a particular prison regulation is a state law claim which is not cognizable in a habeas proceeding. *Bogue v. Vaughn*, 439 F.App'x 700, 707 (10th Cir. 2011) (unpublished).

To the extent Clark is arguing that he was deprived of the right to confront or cross-examine witnesses, prison disciplinary proceedings entail no such absolute right. *Wolff*, 418 U.S. at 567–69 (holding that "adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination"). All that is required with respect to confidential informants is a determination by prison staff that the informant is reliable. *Taylor*, 931 F.2d at 701. Even though the summary Clark received is brief, it nevertheless goes beyond the requirements of *Taylor* by providing not only a reliability determination, but also specific information regarding Clark's motive.

To the extent Clark is arguing that the disciplinary proceeding did not meet *Wolff's* third requirement (written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action), the argument also is without merit. The summary necessarily omits identifying details. The safety and security concerns associated with revealing details that could lead to the identification of the confidential sources are obvious. The Court concludes that together with the Disciplinary Decision, the Summary of Confidential information Clark received was sufficient to meet the requirements of *Wolff*.

---

³ Clark refers to the Summary of Confidential Information for Disciplinary Report #J-07-280, which is the report for the infraction under investigation at the time Sanchez was murdered. Clark was convicted in that proceeding as well, but he does not challenge that conviction here. Nevertheless, the Court liberally construes his argument as applying to the Summary of Confidential Information for the murder conviction.

    **D.    Alleged errors in the state habeas proceedings do not state a claim for federal habeas relief.**

Clark alleges that a number of errors occurred in the state habeas proceedings. Specifically, he claims the state habeas court erred by: (1) consolidating his petition with the petitions of four inmates who were in the pod with Sanchez at the time of the murder; (2) failing to make mention of the distinct facts of his case in its order dismissing his petition; and (3) failing to hold an evidentiary hearing. [Doc. 1 at 5, 6, 10.] These alleged errors, which occurred subsequent to the disciplinary conviction, do not raise cognizable federal habeas claims. If the underlying conviction was proper, flaws in state post-conviction proceedings are not grounds for habeas relief. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998).

**IV.    RECOMMENDATION**

The Court recommends Clark's claim for restoration of good time credits be denied and his petition for writ of habeas corpus under 28 U.S.C. § 2241 [Doc. 1] be dismissed.

                                                                               **W. DANIEL SCHNEIDER**
                                                                               **United States Magistrate Judge**